UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JUSTINA BLOOM, *et al.*,

                          Plaintiffs,

              v.

CITY OF NIAGARA FALLS, *et al.*,

                          Defendants.

_____

**NOTICE OF REMOVAL**

**JURY TRIAL DEMANDED**

Civil Action No.:

              Defendants Occidental Chemical Corporation ("Occidental") (individually

and as alleged successor-in-interest to Hooker Chemicals and Plastics Corporation), Glenn

Springs Holdings, Inc. ("Glenn Springs"), and Miller Springs Remediation Management,

Inc. (collectively "Occidental Defendants"); and Defendants City of Niagara Falls, Niagara

Falls Water Board, Conestoga-Rovers & Associates, Cecos International, Inc., OP-Tech

Environmental Services, Inc., Roy's Plumbing, Inc., Scott Lawn Yard, Inc., and Sevenson

Environmental Services, Inc. (collectively with the Occidental Defendants, the "Removing

Defendants"), hereby give notice of their removal of this action, pursuant to 28 U.S.C. §§

1331, 1367, 1441, 1442, and 1446, and any other applicable laws, from the Supreme Court

of the State of New York, Niagara County, to the United States District Court for the

Western District of New York.  As grounds for removal, the Removing Defendants state as

follows:

## PRELIMINARY STATEMENT

       1.       This is an environmental tort action asserting personal injury and property

claims arising out of alleged chemical exposure in and around Niagara Falls, New York.

This notice of removal invokes this Court's federal question, federal officer, and supplemental jurisdiction based on Plaintiffs' filing of their Second Amended Complaint (**Exhibit 1**, "Complaint"), which expands the scope of the alleged sources of exposure alleged by Plaintiffs. While Plaintiffs originally sought recovery only with respect to the Love Canal site, the new Complaint now alleges the emission of chemicals from three waste disposal sites that are geographically remote from each other (and the Love Canal site), as well as a Niagara Falls plant (or chemical manufacturing) facility owned by Occidental (*e.g.*, *id.* ¶¶ 3, 174-94, 244). **Exhibit 2** is a map depicting the location of each of the sites and facilities in the allegations of the new Complaint.

2.       Those three new waste disposal sites were subject to separate litigations in this Court resulting in federal consent decrees or judgments, as well as extensive remediation required by the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et. seq.* ("CERCLA"), subject to this Court's and the Environmental Protection Agency's ("EPA) continuing jurisdiction. EPA and New York's Department of Environmental Conservation ("DEC") have mandated the remedial activities and monitoring at these three new sites pursuant to CERCLA. EPA and DEC continue to oversee ongoing operation, maintenance, and monitoring ("OM&M") of the remedies, which is conducted by certain of the Removing Defendants under federal authority. DEC reviews and approves the OM&M of the remedies annually. EPA conducts CERCLA Five-Year Reviews for each site's remedy and has concluded in these reviews that each site's remedy is protective of human health and the environment, and functioning as intended.

3.       Despite these government pronouncements that the CERCLA remedies remain effective, Plaintiffs allege that they are being exposed on an ongoing basis to

chemicals from the three new sites under several state law theories, including negligence, strict liability, nuisance, and trespass.

4.     Plaintiffs' claims are within the Court's subject matter jurisdiction because (1) they present substantial federal questions arising under CERCLA, *see* 28 U.S.C. § 1331,[1] (2) they assert claims against defendants for their acts under authority of federal officers, *see id.* § 1442, and (3) they are otherwise within this Court's supplemental jurisdiction.  *See id.* § 1367.

## FACTUAL BACKGROUND RELEVANT TO THE AMENDED COMPLAINT'S ALLEGATIONS ABOUT THE THREE NEW CERCLA SITES

5.     Congress enacted CERCLA in 1980 as a comprehensive federal program to clean up applicable sites. 42 U.S.C. §§ 9601-9675.  It authorizes the EPA and state agencies (such as DEC) to investigate and clean up applicable sites.  *See* 42 U.S.C. § 9604(a); EPA. Exec. Order No. 12,580, 52 Fed. Reg. 2,923 (Jan. 23, 1987); 42 U.S.C. § 9604(d)(1)(A); 40 C.F.R. § 300.400(d).

6.     Once EPA or DEC determines a site requires a cleanup, CERCLA sets forth a deliberate, step-by-step administrative process for one or both agencies to select and implement a comprehensive remedy, all subject to public notice and comment and judicial review.  42 U.S.C. § 9617; 40 C.F.R. § 300.400(d).  The agencies must investigate potential

---

[1]     When the United States commenced the lawsuits for all four waste disposal sites against Occidental in 1979, CERCLA was not yet enacted, and the government sought to compel the remediation of the sites under the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et. seq. ("RCRA").  Following CERCLA's enactment in 1980, remediation of all four sites transitioned from the RCRA program to the CERCLA program, where all four reside today.  To the extent that any historic remedial actions or obligations originally arose under RCRA, plaintiffs' claims also present substantial federal questions arising under that statute, in addition to the CERCLA response actions and obligations that are implicated by these claims at all four sites.

remedies that eliminate, reduce, and control risks to human health and the environment, 42 U.S.C. § 9620(e)(1); 40 C.F.R. § 300.430, evaluate each potential remedy's long-term protectiveness of human health and the environment, 40 C.F.R. § 300.430(e)(9)(iii), and memorialize the final remedy plan in a Record of Decision ("ROD").  40 C.F.R. § 300.430(f)(5).  After a CERCLA remedy is designed and implemented, EPA and DEC approve and periodically review the remedy, to ensure that it meets CERCLA's cleanup standards.  42 U.S.C. § 9621(c); 40 C.F.R. § 300.400(h).

7.     The Complaint alleges ongoing migration from three new CERCLA remedial sites—102nd Street, S-Area, and Hyde Park—that were not previously at issue in this action, all of which have been remediated pursuant to CERCLA's comprehensive cleanup framework and pursuant to federal consent decrees or their equivalent.

**A.     The CERCLA remediation of the 102nd Street site**

8.     The 102nd Street site is located in Niagara Falls in an area surrounded by industrial property and residential homes.  (*See* **Exhibit 3** (102nd Street ROD), at Report Documentation Page.)  Hooker (and others) reportedly disposed of waste at the 102nd Street site from 1943 until 1970.  (*Id.*)  In 1979 and 1980, EPA and New York State sued Hooker (and others) concerning the 102nd Street site and its cleanup.  (*Id.* at 4; *United States v. Hooker Chemicals & Plastics Corp.*, No. 79-CV-987C (W.D.N.Y.).)  The 102nd Street site was added to the CERCLA NPL in 1983.  48 Fed. Reg. 40658-01 (Sept. 8, 1983).  The lawsuit was amended in 1986 and 1987 to add claims under CERCLA.  (**Exhibit 4** (102nd Street Consent Decree) ¶¶ 1-3.)  The 102nd Street site is on the Niagara River directly south of the nearby Love Canal site.  (Ex. 2.)

9.     The 102nd Street site remedy was selected by the agencies through a CERCLA Record of Decision ("102nd Street ROD"), after public notice and comment, and under this Court's supervision.  (Ex. 3.)  In 1990, EPA issued a ROD that called for capping the landfill site and surrounding areas; constructing a slurry wall around the site, extracting non-aqueous phase liquids, and dredging river sediment; transporting sediment and leachate for off-site incineration; dredging and dewatering sediments; recovering groundwater with an interception drain; cleaning the storm sewer and placing a slip liner in the sewer; long-term groundwater monitoring; and implementing deed and land use restrictions, and fencing.  (*Id.* at 3.)  The 102nd Street ROD further required Occidental (and others) to prepare a remedial investigation and perform certain remedial work.  (*Id.* at 4.)  In 1995, EPA amended the 1990 102nd Street ROD to modify the remedy's treatment of certain sediments.  (**Exhibit 5** (1995 Amended 102nd Street ROD).)

10.     In 1999, EPA, New York, and Occidental (and others) entered into a Consent Decree reflecting that Occidental (and others) had implemented certain remedial work, and required Occidental (and others) to further implement, operate, and monitor the remedy selected by EPA.  (Ex. 4 ¶¶ 9, 16.)  This Court retained jurisdiction to enforce the Consent Decree.  (*Id.* ¶ 113.)

11.     Occidental (and others) implemented the 102nd Street remedy under EPA and DEC's authority and oversight pursuant to the 102nd Street Consent Decree, ROD, and Amended ROD.  In 2004, EPA deleted the 102nd Street site from the CERCLA NPL after concluding that "all appropriate response actions . . . have been implemented and that no further response actions, other than operation, maintenance, and monitoring, are required."

69 Fed. Reg. 12604-01, 12604 (proposed Mar. 17, 2004); 69 Fed. Reg. 47377-01 (Aug. 5, 2004) (final rule).

12.     Occidental,  its affiliates, its contractor, and others have performed the OM&M activities as directed by EPA and DEC.  DEC reviews and approves annual reports about the remedy's effectiveness, and confirms that the remedy continues to be operating as intended and is protective of human health and the environment.  (*E.g.*, **Exhibit 6** (2018 102nd Street OM&M Report).)

13.     EPA also conducts extensive evaluations of the remedy, and documents its findings in CERCLA Five-Year Reviews.  These reports have been issued in 2001, 2006, 2011, and 2016, all following public notice and comment.  (*E.g.*, **Exhibit 7** (2016 102nd Street Five-Year Review).)   In each, EPA has concluded that the 102nd Street remedy "protects human health and the environment," and is "functioning as designed." (*Id.* at i, iii.)

**B.      The CERCLA remediation of the S-Area site**

14.     The S-Area site is located within the premises of Occidental's (formerly Hooker's) facility on Buffalo Avenue in Niagara Falls. *United States v. Hooker Chemicals & Plastics Corp.*, 607 F. Supp. 1052, 1053-54 (W.D.N.Y. 1985) (No. 79-CV-988C).  The S-Area site reportedly was used for waste disposal between 1947 and 1961, and for washing equipment from 1961 until its closure in 1975.  *Id.*  In 1979, EPA and New York State sued Hooker concerning the S-Area site and its cleanup under RCRA and other federal and state laws*. Id.* at 1055.  The S-Area site was added to the NPL in 1983.  48 Fed. Reg. 40658-01 (Sept. 8, 1983).  The lawsuit was amended in 1982 to add a claim under CERCLA.

(**Exhibit 8** (S-Area 1982 Second Amended Complaint).)  The S-Area site is located approximately 2.6 miles west of the Love Canal site.  (Ex. 2.)

15.     In 1984, EPA, New York, and Occidental entered into a Stipulation and Judgment Approving Settlement Agreement that required Occidental to undertake remedial activities at the S-Area site under the oversight of EPA and DEC.  (**Exhibit 9** ("S-Area Consent Judgment") § 4 (c).)  This Court approved the Consent Judgment, *Hooker Chemicals & Plastics Corp.*, 607 F. Supp. at 1070, and retained jurisdiction to enforce it.  (Ex. 9 § 19.)

16.     The S-Area remedy was selected by the agencies through a ROD, pursuant to CERCLA and/or RCRA, after public notice and comment, and under this Court's supervision.  In 1990, EPA issued a ROD that called for abandoning service and utility lines; capping on-site lagoons, the landfill, and surrounding areas; constructing a site barrier wall and drain tile collection system; pumping and treating groundwater and leachate; treating aqueous and non-aqueous phase liquids; closing and demolishing part of the drinking water treatment plant; constructing a new drinking water treatment plant; and monitoring groundwater.  (**Exhibit 10** (S-Area ROD) at 2-3.)  The S-Area ROD further required Occidental to operate and maintain the remedy.  (*Id.* at 12-16.)

17.     Occidental, or its affiliates or their contractor, has performed the OM&M activities as directed by EPA and DEC.  DEC reviews and approves annual reports about the remedy's effectiveness, and confirms that the remedy continues to be operating as intended and is protective of human health and the environment.  (*E.g.*, **Exhibit 11** (2018 S-Area OM&M Report).)

18.     EPA also conducts extensive evaluations of the remedy, and documents its findings in CERCLA Five-Year Reviews.  These reports have been issued in 1999, 2004,

2009, 2014, and 2019, all following public notice and comment.  (*E.g.*, **Exhibit 12** (2019 S-Area Five Year Review).)   Repeatedly, EPA has concluded that the remedy is "protective of human health and the environment," and is "functioning as intended." (*Id.* at 15, 17.)

**C.   The CERCLA remediation of the Hyde Park site**

19.     The Hyde Park site is located in an industrial area of the Town of Niagara, and was used for waste disposal by Hooker until 1975. *United States v. Hooker Chemicals & Plastics Corp.,* 540 F. Supp. 1067, 1069-70 (W.D.N.Y. 1982) (No. 79-CV-989C).  In 1979, EPA and New York State sued Hooker concerning the Hyde Park site and its cleanup*. Id.* The Hyde Park site is located approximately 5.5 miles northwest of the Love Canal site. (Ex. 2.)

20.     In 1981, EPA, New York, and Occidental entered into a Stipulation and Judgment Approving Settlement Agreement in which they agreed that EPA would investigate and select the Hyde Park remedy, and that Occidental would implement it under EPA's supervision.  (**Exhibit 13** ("Hyde Park Consent Judgment") at § 4 (c).)  This Court approved the Consent Judgment, *Hooker Chemicals & Plastics Corp.,* 540 F. Supp. at 1086, and retained jurisdiction to enforce the Consent Judgment.  (Ex. 13 § 19.)  The Hyde Park site was added to the NPL in 1983.  48 Fed. Reg. 40658-01 (Sept. 8, 1983).

21.     The Hyde Park remedy was selected by the agencies through a ROD, pursuant to CERCLA and/or RCRA, after public notice and comment, and under this Court's supervision.  In 1985, EPA issued a ROD that called for installation of a purge well and tile drain system; implementation of engineering controls and groundwater wells as part of a residential community monitoring program; installation of plume containment systems; and groundwater treatment and monitoring studies.  (**Exhibit 14** (Hyde Park ROD) at 2-3,

5-7.)  The Hyde Park ROD required Occidental to operate and maintain the remedy.  (*Id.* at 10, 14.)

22.  Occidental implemented the Hyde Park remedy, and has performed the OM&M under EPA and DEC's oversight pursuant to the Hyde Park Consent Judgment and ROD.  In 2013, EPA deleted the Hyde Park site from the NPL, after concluding that "all appropriate response actions under CERCLA, other than operation, maintenance, . . . and [F]ive-[Y]ear [R]eviews have been completed."  77 Fed. Reg. 50038-01, 50043 (proposed Aug. 20, 2012); 78 Fed. Reg. 63099-01 (Oct. 23, 2013) (final rule).

23.  Occidental, or its affiliates or their contractor, has performed the OM&M activities as directed by EPA and DEC.  DEC reviews and approves annual reports about the remedy's effectiveness, and confirms that the remedy continues to be operating as intended and is protective of human health and the environment.  (*E.g.*, **Exhibit 15** (2018 Hyde Park OM&M Report).)

24.  EPA also conducts extensive evaluations of the remedy and documents its findings in CERCLA Five-Year Reviews.  These reports have been issued in 1996, 2001, 2006, 2011, and 2016, all following public notice and comment.  (*E.g.*, **Exhibit 16** (2016 Hyde Park Five Year Review).)  In each review, EPA has concluded that "[t]he remedy at the Hyde Park Landfill Superfund site protects human health and the environment," that there are no exposure pathways resulting in unacceptable risk, and that the remedy "is functioning as intended."  (*Id.* at iii, 1.)

## GROUNDS FOR FEDERAL JURISDICTION

**I.     This Court has Federal Question Jurisdiction (28 U.S.C. § 1331)**

### A.    Plaintiffs' Claims Challenge CERCLA Remedies and Duties Emanating from CERCLA Consent Decrees

25.     "[D]istrict courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts, thus, have "exclusive original jurisdiction over all controversies arising under" CERCLA. 42 U.S.C. § 9613(b).

26.     Although the existence of federal jurisdiction normally depends upon whether the plaintiff has pleaded a federal cause of action, the Supreme Court has recognized for nearly 100 years that "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *Smith v. Kansas City Title & Tr. Co.*, 255 U.S. 180, 199 (1921). A state-law claim is removable under federal question jurisdiction if: (a) it "necessarily raise[s] a stated federal issue" on the face of the complaint; (b) the federal issue is "actually disputed and substantial"; and (c) the claim can be adjudicated in federal court "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. A state-law claim necessarily implicates a significant federal issue when it "appears from the [complaint] that the right to relief depends upon the construction or application of [federal law]." *Id.* (quoting *Smith*, 255 U.S. at 199).

27.     The Second Circuit has thus held in *Bartlett v. Honeywell Int'l Inc.* that a plaintiff's state common law claims for damages are removable under *Grable* where they turn on whether a defendant has complied with a CERCLA consent decree, or whether CERCLA might preempt such claims. 737 F. App'x 543, 546 (2d Cir. 2018) (summary

order), *cert. denied,* 139 S. Ct. 343 (2018), *aff'g Camillus Clean Air Coal. v. Honeywell Int'l, Inc.*,

No. 5:13-cv-365 (FJS) (DEP), 2013 WL 4774507, at *2 n.2 (N.D.N.Y. Sept. 4, 2013) ("a

contrary holding that the district court lacks jurisdiction could allow litigants to use the state

courts as a vehicle to undermine a federal court's ability to police its consent decrees")

(quoting *United States v. City of Loveland*, 621 F.3d 465, 472 (6th Cir. 2010)).  The allegations

in the Complaint are directly on point with those in *Bartlett* and are removable for the very

same reasons.

28.     First, the Complaint raises federal issues.  Plaintiffs' claims of ongoing

exposure from the 102nd Street, S-Area, and Hyde Park CERCLA remedies (*e.g.*, Compl. ¶¶

3, 174-94) challenge the sufficiency and effectiveness of those remedies that were designed

and implemented by or at the direction of EPA and DEC, and have been operated,

maintained, and monitored by the Occidental Defendants pursuant to federal Consent

Decrees and DEC's and EPA's continuous oversight and approval through the present day.

(*E.g.*, Exs. 3-16.)

29.     Plaintiffs also allege that the Occidental Defendants breached duties that arise

under federal Consent Decrees.  (*E.g.*, Compl. ¶ 65 (alleging "misconduct relating to the

Occidental Plant and its related waste disposal operations"); ¶ 65(j) ("failing to adequately

monitor the actual effects of the chemicals and/or toxins that it had wrongfully emitted");

¶ 65(n) ("failing to continuously monitor and warn the neighborhood residents (including

Plaintiffs) of the dangers posed by the materials it had emitted and/or continues to emit");

¶ 186 ("each of these waste areas [102nd Street, S-Area, and Hyde Park sites] resulted in

substantial toxic exposures to the community").

30.     The Occidental Defendants' CERCLA OM&M duties for the remedies implemented at the 102nd Street, S-Area, and Hyde Park sites arise from the sites' respective federal Consent Decrees.  Thus, Plaintiffs' negligent OM&M claims depend upon the construction of federal consent decrees, which necessarily implicate issues of federal law.  *See*, *e.g.*, 42 U.S.C. §§ 9613(b), 9613(h), 9622(e)(6); *Camillus*, 2013 WL 4774507, at *1-2, *aff'd*, *Bartlett,* 737 F. App'x at 546; *Loveland*, 621 F.3d at 471; *cf. Marcus v. AT&T Corp.*, 138 F.3d 46, 56 (2d Cir. 1998) (recognizing a federal issue when, even though plaintiffs did "not expressly identify the source" of the duty underlying their claims, "the only possible source" was a federal tariff).

31.     Second, the "disputed and substantial" element of *Grable* is satisfied because the federal issues raised by Plaintiffs' claims of ongoing exposure from the 102nd Street, S-Area, and Hyde Park CERCLA sites are contrary to the EPA's, DEC's, and Occidental Defendants' extensive CERCLA review and approval documentation concerning the CERCLA sites, all of which have consistently determined that the remedies at all of these sites have been and continue to be protective of human health and the environment.

32.     Third, jurisdiction is proper because it would not disturb "any congressionally approved balance of federal and state judicial responsibilities" for this action to be heard in federal court, including any arguments for dismissal.  *Grable*, 545 U.S. at 314.  In fact, the Second Circuit has held that "issues implicated by" allegations of residents near a CERCLA site about "whether [defendant] has complied with a consent decree approved by a federal district court . . . are amenable to federal court resolution without interfering with the federal-state balance approved by Congress." *Bartlett*, 737 F. App'x at 546.  Exercising federal jurisdiction over this action would not disrupt any balance between the federal and

state courts, moreover, because environmental cases involving remediated sites are frequently litigated in federal court under federal statutes such as CERCLA, Clean Water Act, and Clean Air Act, or pursuant to diversity jurisdiction, 28 U.S.C. § 1332(a), or the Class Action Fairness Act of 2005, *codified at* 28 U.S.C. §§ 1453, 1711-15; *see also* 28 U.S.C. § 1332(d).  Finally, this Court has presided over the complex, multi-party 102nd Street, S-Area, and Hyde Park litigations for several decades.  Under these circumstances, any allegations of failure to discharge duties under this Court's Consent Decrees are properly adjudicated by this Court.

33.     Because Plaintiffs' negligent OM&M claims implicate a substantial and disputed federal question about the effectiveness of the 102nd Street, S-Area, and Hyde Park CERCLA remedies, this Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441.

## B.     Plaintiffs' claim that Defendants failed to notify the government presents a controversy arising under CERCLA

34.     Section 103(a) of CERCLA requires that "[a]ny person in charge of . . . an onshore facility shall," upon "knowledge of any release of a hazardous substance," notify the government.  42 U.S.C.  § 9603(a).

35.     Plaintiffs allege that the Occidental Defendants and others "fail[ed] to advise relevant government authorities of the dangerous nature of the toxins being released from the Occidental Plant . . . and its related waste disposal operations in Niagara Falls." (Compl. ¶ 65, 65(i).)  Plaintiffs claim that these alleged failures and releases "continue[] to this day and [are] likely to continue into the future."  (*E.g.*, *id.* ¶ 218).

36.     Because the duty to notify governmental authorities of releases of hazardous substances arises under CERCLA § 103(a), Plaintiffs' claim presents a controversy arising under CERCLA.

## II.   This Court has Federal Officer Jurisdiction (28 U.S.C. § 1442(a))

37.     The federal officer removal statute authorizes removal when a defendant is sued for acts it performed at the direction of a federal officer.  28 U.S.C. § 1442(a)(1). Removal is appropriate if:  (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) the defendant was acting "under color of" federal office at the time of the allegedly tortious conduct; and (4) the defendant raises a "colorable" federal defense.  *See Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014) (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008)).

38.     Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999).  This is because Section 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office."  *Albrecht v. A.O. Smith Water Prods.*, No. 11-CV-5990., 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)."  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).  To the contrary, "the statute as a whole must be liberally construed" in favor of removal.  *Isaacson*, 517 F.3d at 136.

39.     Here, the Complaint and the Occidental Defendants' anticipated defenses thereto satisfy the federal officer removal statute.

40.     The first requirement is satisfied because "corporations"—such as the Occidental Defendants—are "persons" under the statute. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *Isaacson*, 517 F.3d at 135-36.

41.     The second requirement ("acting under" a federal officer) is satisfied where, as here, an entity assists or helps carry out, the duties of a federal officer. *Isaacson*, 517 F.3d at 137. "The words 'acting under' are to be interpreted broadly." *Id.* at 136. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Here, the Occidental Defendants implemented remedies at the 102nd Street, S-Area, and Hyde Park sites that were selected, supervised, and approved by EPA and DEC pursuant to CERCLA, and performed the CERCLA sites' OM&M as directed and approved by EPA and DEC pursuant to CERCLA.

42.     The third requirement, that a defendant acted "under color of federal office[,] . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (internal quotation marks, alterations, and citation omitted). Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low," and courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Id.* at 137. "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson*, 517 F.3d at 137-38 (emphasis in original). Here, as discussed above, the Complaint is replete with claims that the Occidental Defendants have failed to adequately

remediate the 102nd Street, S-Area, and Hyde Park CERCLA sites or notify the government that the remedies were not working.  All of these alleged failures, however, occurred while the Occidental Defendants were carrying out their federal Consent Decree duties under EPA's and DEC's supervision pursuant to CERCLA.

43.    For the fourth element ("colorable federal defense"), at the removal stage, a defendant need only show that its federal officer defense is colorable.  "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citation omitted).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116 (citing *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)).  Moreover, "this inquiry is undertaken whil[e] viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo,* 771 F.3d at 116 (citation omitted).

44.    This element is satisfied because the Occidental Defendants assert that Plaintiffs' claims seek liability for conduct taken pursuant to federal law, regulations, and CERCLA consent decrees, or that conflict with them, and are thus preempted.  Courts have repeatedly held that CERCLA consent orders are federal directives that have the same preemptive effect as federal statutes. *See Town of Halfmoon v. Gen. Elec. Co.*, 105 F. Supp. 3d 202, 217-18 (N.D.N.Y. 2015) (dismissing certain state law claims as preempted; reasoning

that "[i]t is impossible for [defendant] to comply with . . . the [CERCLA] Consent Decree without subjecting itself to liability under state . . . law"); *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1454-57 (6th Cir. 1991) (dismissing state law claims as preempted by CERCLA and consent order).  Thus, the Second Circuit has held that "CERCLA preempts [plaintiffs'] attempts to impose state tort law liability on [defendants] for not going above and beyond" what EPA requires pursuant to CERCLA and federal Consent Decrees. *Bartlett*, 737 F. App'x at 551.

45.     For all of these reasons, federal officer jurisdiction exists under 28 U.S.C. § 1442(a)(1).

\*    \*    \*    \*    \*

46.     Finally, this action previously made allegations about the Love Canal site only.  Before this action was filed, a complaint similar to the one here was removed based on similar allegations about the Love Canal site, and was remanded.  *Abbo-Bradley v. City of Niagara Falls*, No. 13-CV-487-JTC, 2013 WL 4505454 (W.D.N.Y. Aug. 22, 2013).  This Notice of Removal arises from the new allegations about the three CERCLA sites that were not previously before the state trial court in this action or the *Abbo-Bradley* District Court.

## III.   This Court has Supplemental Jurisdiction (28 U.S.C. § 1367)

47.     This Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  As set forth above, Plaintiffs' negligent OM&M claims, and claim that a duty to notify to the government was breached, are all within this Court's original jurisdiction pursuant to 28 U.S.C. § 1331.  Any other claims in this action arise out of the same case or

controversy because they seek to recover the same damages for personal injuries and property damages allegedly arising from the 102nd Street, S-Area, and Hyde Park CERCLA sites.

48.     Accordingly, there is supplemental jurisdiction over all other claims in this action.

## ALL PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

49.     This Notice of Removal is timely filed because it is filed within 30 days of service of Plaintiffs' Amended Complaint, which is the first filed pleading making allegations and claims about the 102nd Street, S-Area, and Hyde Park CERCLA sites and remedies and therefore presented grounds for federal question jurisdiction that could not have previously been presented.

50.     The New York Supreme Court, Niagara County, is located within the Western District of New York.  *See* 28 U.S.C. § 1441(a).

51.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon the Occidental Defendants in this action are attached as Exhibits 18-19. Pursuant to Local Rule of Civil Procedure 81(a)(3), an index identifying each document filed and/or served in the state court action, and each such document individually tabbed and arranged in chronological order, is attached as Exhibit 17.

52.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the New York Supreme Court, Niagara County.

53.     The Removing Defendants reserve the right to amend or supplement this Notice of Removal.

54.     If any other question arises as to the propriety of the removal of this action, the Removing Defendants request the opportunity to present a brief and request oral argument in support of removal.

WHEREFORE, the Removing Defendants hereby remove this action from the New York Supreme Court, Niagara County, to this Court.

Date:  January 31, 2020

PHILLIPS LYTLE LLP

By: _____
      Kevin M. Hogan
      Joel A. Blanchet
      Lisa L. Smith
      Andrew P. Devine
      Deena K. Mueller-Funke
Attorneys for Defendants
*Glenn Springs Holdings, Inc., Miller Springs*
*Remediation Management, Inc., and Occidental*
*Chemical Corporation*
One Canalside, 125 Main Street
Buffalo, New York  14203-2887
Telephone:  (716) 847-8400
khogan@phillipslytle.com
jblanchet@phillipslytle.com
lsmith@phillipslytle.com
adevine@phillipslytle.com
dmueller-funke@phillipslytle.com

DECHERT LLP
Sheila L. Birnbaum
Douglas E. Fleming III
Mara Cusker Gonzalez
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 698-3500
sheila.birnbaum@dechert.com
douglas.fleming@ dechert.com
mara.cuskergonzalez@ dechert.com

NIAGARA FALLS
CORPORATION COUNSEL

By:   /s/  Thomas J. DeBoy
      Thomas J. DeBoy
Attorneys for Defendant
*City of Niagara Falls*
City Hall, 745 Main Street, PO Box 69
Niagara Falls, New York  14302-0069
Telephone:  (716) 286-4379
Thomas.DeBoy@niagarafallsny.gov

HODGSON RUSS LLP

By:   /s/ Jeffrey C. Stravino
      Jeffrey C. Stravino
Attorneys for Defendant
*Conestoga-Rovers & Associates*
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202
Telephone:  (716) 856-4000
jstravino@hodgsonruss.com

GREENBERG TRAURIG, LLP

By:   /s/ Steven C. Russo
      Steven C. Russo
      Zackary D. Knaub
Attorneys for Defendant
*Cecos International, Inc.*
Metlife Building
200 Park Avenue
New York, New York 10166
Telephone:  (212) 801-2155
russos@gtlaw.com
knaubz@gtlaw.com

PILLINGER MILLER TARALLO LLP

By:  /s/ Jeffrey D. Schulman
      Jeffrey D. Schulman
      Maria Mastriano
Attorneys for Defendant
*OP-Tech Environmental Services, Inc.*
126 North Salina Street, Suite 215
Syracuse, New York  13202
Telephone:  (914) 703-6300
jschulman@pmtlawfirm.com
mmastriani@pmtlawfirm.com

THE KNOER GROUP, PLLC

By:  /s/ Robert E. Knoer
      Robert E. Knoer
      Alice J. Cunningham
Attorneys for Defendant
*Roy's Plumbing, Inc.*
424 Main Street, Suite 1820
Buffalo, New York  14202
Telephone:  (716) 332-0032
rknoer@knoergroup.com
acunningham@knoergroup.com

HURWITZ & FINE, P.C.

By:  /s/ David R. Adams
      David R. Adams
      Agnieszka A. Wilewicz
Attorneys for Defendant
*Sevenson Environmental Services*
1300 Liberty Building
Buffalo, New York  14202
Telephone:  (716) 849-8900
dra@hurwitzfine.com
aaw@hurwitzfine.com

SUGARMAN LAW FIRM, LLP

By:  /s/ Brian Sutter
      Brian Sutter
Attorneys for Defendant
*Scott Lawn Yard, Inc.*
1600 Rand Building
14 Lafayette Square
Buffalo, New York  14203
Telephone:  (716) 847-2523
bsutter@sugarmanlaw.com

Doc #4705437.2